**THE MCBRIDE LAW FIRM, PC**
Melanie G. McBride (SBN 023348)
Email: melanie@mcbridelawaz.com
Keith A. Gernant (SBN 030314)
Email: keith@mcbridelawaz.com
9929 N. 95th St., Ste. Q-110
Scottsdale, Arizona  85258
Telephone:  (480) 678-Law1

*Attorneys for Plaintiffs*

THE MCBRIDE LAW FIRM, PC
Attorneys At Law
9929 N. 95th Street, Suite Q-110
Scottsdale, Arizona 85258
Telephone: 480-678-Law1 / Facsimile: 602-808-9005

## UNITED STATES DISTRICT COURT

## DISTRICT OF ARIZONA

| | |
|---|---|
| MARILYN L. GOODNIGHT and HAROLD T. GOODNIGHT, JR., wife and husband, | Case No. |
| Plaintiffs, | **COMPLAINT**<br>**(Strict Product Liability)** |
| v. | |
| AMERICAN MEDICAL SYSTEMS, INC.; and ENDO PHARMACEUTICALS HOLDINGS, INC., d/b/a ENDO HEALTH SOLUTIONS, INC., | |
| Defendants. | |

Plaintiffs Marilyn and Harold Goodnight for their Complaint against Defendants, and each of them, allege as follows:

### Parties and Venue

1.     Plaintiffs Marilyn and Harold Goodnight are wife and husband and, at all times relevant hereto, are residents of Maricopa County, AZ.  Mrs. Goodnight is legally blind.

2.     American Medical Systems, Inc. ("AMS") is a Delaware corporation, with its principal place of business at 10700 Bren Road West, Minnetonka, Minnesota.

3.     Upon information and belief, Defendant AMS is a wholly owned subsidiary of Defendant Endo Pharmaceuticals Holdings, Inc., doing business as Endo Health Solutions, Inc.

THE MCBRIDE LAW FIRM, PC
Attorneys At Law
9929 N. 95th Street, Suite Q-110
Scottsdale, Arizona 85258
Telephone: 480-678-Law1/ Facsimile: 602-808-9005

4. Defendant Endo Pharmaceuticals Holdings, Inc. ("Endo") is a Delaware corporation with its principal place of business in Pennsylvania, at 100 Endo Boulevard, Chadds Ford, Pennsylvania 19317. Endo was the parent of wholly-owned subsidiary, Endo. On or about May 23, 2012, Endo changed its name to Endo Health Solutions, Inc.

5. At all relevant times, Defendant Endo merged with American Medical Systems (AMS), the manufacturer of defective synthetic mesh systems used for both pelvic organ prolapsed (POP) and stress urinary incontinence (SUI), and, as part of the acquisition of said manufacturer's complete line of urogynecological medical devices, purchased and assumed all liability relating to legal claims arising from the implantation of the synthetic mesh systems.

6. On June 17, 2011, Endo completed the acquisition of AMS for approximately $2.4 billion in aggregate consideration, including $2.3 billion in cash paid for equity, $71.6 million related to existing AMS stock-based compensation awards and certain other amounts, at which time AMS became a wholly-owned subsidiary of ENDO. AMS's shares were purchased at a price of $30.00 per share. The acquisition has been accounted for as a business combination (in accordance with ASC 805 Business Combinations) and, as such, the AMS assets acquired and liabilities assumed have been recorded at their respective fair values. The determination of fair value for the identifiable tangible and intangible assets acquired and liabilities assumed requires extensive use of accounting estimates and judgments.

7. In reporting the completion of the acquisition of AMS, ENDO provided an Unaudited Pro Forma Condensed Combined Financial Statement which makes clear that ENDO purchased all of AMS's liabilities including all that may be related to products liability claims.

8. Federal subject matter jurisdiction is based upon 28 U.S.C. § 1332(a), in that there is complete diversity among Plaintiffs and Defendants and the amount in controversy exceeds $75,000.

THE MCBRIDE LAW FIRM, PC
Attorneys At Law
9929 N. 95th Street, Suite Q-110
Scottsdale, Arizona 85258
Telephone: 480-678-Law1/ Facsimile: 602-808-9005

9.     Defendants have significant contacts with the state of Arizona such that they are subject to the personal jurisdiction of the District Court of Arizona.

10.     Pursuant to 28 U.S.C. § 1391(a), venue is proper in said District.

**Factual Background**

11.     Plaintiffs incorporate by reference Paragraphs 1-10 of this Complaint as if fully set forth herein.

12.     On August 4, 2011, Plaintiff Marilyn Goodnight was implanted with a transvaginal synthetic mesh system for pelvic organ prolapsed and/or stress urinary incontinence, sold under the name MiniArc® Single-Incision Sling System (hereafter "MiniArc Sling"). Following the procedure, Mrs. Goodnight continued to experience urinary incontinence and frequent urination as well as significant pelvic pain. The MiniArc Sling failed, resulting in Mrs. Goodnight seeking further medical treatment and undergoing corrective procedures. Mrs. Goodnight suffered extensive pain and needed numerous medical procedures in order to correct the damage caused by the failed MiniArc Sling.

13.     Shortly after Mrs. Goodnight was implanted with the MiniArc Sling, she suffered a perforation to her bowel, which is a known complication of the use of pelvic mesh products. As a result of the perforation, Mrs. Goodnight suffered severe septic shock, required immediate surgical intervention and spent several weeks in a coma due to the severity of the septic shock. Thereafter, Mrs. Goodnight spent months in intensive physical therapy to regain strength and proper use of her limbs. Mrs. Goodnight suffered permanent injuries as a result of the perforation of her colon.

14.     Up until Mrs. Goodnight was implanted with the MiniArc Sling, she enjoyed socializing with friends and family, held a part-time position at her local Costco, was active in her community and enjoyed traveling with her husband. As a result of the injuries and complications Mrs. Goodnight suffered as a result of the implantation of the MiniArc Sling, Mrs. Goodnight was never able to work again, was unable to travel, required a colostomy for an extended period of time, underwent several medical procedures, and lost the

enjoyment of the life she knew pre-implantation.

15.   At all times material to this action, Defendants designed, patented, manufactured, labeled, marketed, and sold and distributed pelvic mesh products, including a product called the MiniArc Sling.

16.   The MiniArc Sling was designed primarily for the purpose of treating stress urinary incontinence and pelvic organ prolapse.

17.   The MiniArc Sling shared a common design elements and common defects of other pelvic mesh slings manufactured and distributed by Defendants.

18.   The MiniArc Sling was cleared for sale in the U.S. after the Defendants made assertions to the Food and Drug Administration of "Substantial Equivalence" under Section 510(k) of the Food, Drug and Cosmetic Act; this clearance process does not require the applicant to prove safety or efficacy.

19.   Defendants' pelvic mesh products, including the MiniArc Sling, contain monofilament polypropylene mesh and/or collagen. Despite claims that polypropylene is inert, the scientific evidence shows that this material when implanted in a female patient was biologically incompatible with human tissue and promotes a negative immune response in a large subset of the population. This negative response promotes inflammation of the pelvic tissue and can contribute to the formation of severe adverse reactions to the mesh.

20.   Defendants' mesh products containing collagen caused hyper-inflammatory responses leading to problems including chronic pain and fibrotic reaction. Defendants' collagen products would disintegrate after implantation in the female pelvis. The collagen products caused adverse tissue reactions, and are causally related to infection, as the collagen is a foreign material derived from animal tissue. Animal collagen is harsh upon the female pelvic tissue. It hardens in the body.

THE MCBRIDE LAW FIRM, PC
Attorneys At Law
9929 N. 95th Street, Suite Q-110
Scottsdale, Arizona 85258
Telephone: 480-678-Law1/ Facsimile: 602-808-9005

THE McBRIDE LAW FIRM, PC
Attorneys At Law
9929 N. 95th Street, Suite Q-110
Scottsdale, Arizona 85258
Telephone: 480-678-Law1/ Facsimile: 602-808-9005

21.     When Defendants' mesh products, including the MiniArc Sling, is inserted in the female body according to the manufacturers' instructions, it creates a non-anatomic condition in the pelvis leading to chronic pain and functional disabilities.

22.     Defendants sought and obtained FDA clearance to market the MiniArc Sling under Section 510(k) of the Medical Device Amendment to the Food, Drug and Cosmetics Act.  Section 510(k) provides for marketing of a medical device if the device is deemed "substantially equivalent" to other predicate devices marketed prior to May 28, 1976.  No formal review for safety or efficacy is required, and no formal review for safety or efficacy was ever conducted with regard to the MiniArc Sling.

23.     On October 20, 2008, the Food and Drug Administration ("FDA") issued a Public Health Notification that described over 1,000 reports of complications ("adverse events") that had been reported over a three year period relating to pelvic mesh products.

24.     Although the FDA notice did not identify the transvaginal mesh manufacturers by name, a review of the FDA's MAUDE database indicates that the Defendant is one of the manufacturers of the products that are the subject of the notification.  In 2008, the FDA described the complications associated with pelvic mesh products as "rare."

25.     On July 13, 2011, the FDA issued a Safety Communication wherein the FDA stated that "serious complications associated with surgical mesh for transvaginal repair of POP are not rare".

26.     The FDA Safety Communication also stated, "*Mesh contraction* (shrinkage) is a *previously unidentified risk* of transvaginal POP repair with mesh that has been reported in the published scientific literature and in adverse event reports to the FDA . . . Reports in the literature associate mesh contraction with vaginal shortening, vaginal tightening and vaginal pain." (Emphasis in original).

27.     The FDA Safety Communication further indicated that the benefits of using transvaginal mesh products instead of other feasible alternatives did not outweigh the

THE McBRIDE LAW FIRM, PC
Attorneys At Law
9929 N. 95th Street, Suite Q-110
Scottsdale, Arizona 85258
Telephone: 480-678-Law1/ Facsimile: 602-808-9005

associated risks.

28.    Specifically, the FDA Safety Communication stated: "it is not clear that transvaginal POP repair with mesh is more effective than traditional non-mesh repair in all patients with POP and it may expose patients to greater risk."

29.    Contemporaneously with the Safety Communication, the FDA released a publication titled "Urogynecologic Surgical Mesh: Update on the Safety and Effectiveness of Transvaginal Placement for Pelvic Organ Prolapse" (the "White Paper"). The FDA noted that the published, peer-reviewed literature demonstrates that "[p]atients who undergo POP repair with mesh are subject to mesh-related complications that are not experienced by patients who undergo traditional surgery without mesh."

30.    The FDA summarized its findings from its review of the adverse event reports and applicable literature stating that it "has NOT seen conclusive evidence that using transvaginally placed mesh in POP repair improves clinical outcomes any more than traditional POP repair that does not use mesh, and it may expose patients to greater risk."

31.    The FDA White Paper further stated that "these products are associated with serious adverse events . . . Compounding the concerns regarding adverse events are performance data that fail to demonstrate improved clinical benefit over traditional non-mesh repair."

32.    In its White Paper, the FDA advises doctors to, *inter alia*, "[r]ecognize that in most cases, POP can be treated successfully without mesh thus avoiding the risk of mesh-related complications."

33.    The FDA concludes its White Paper by stating that it "has identified serious safety and effectiveness concerns over the use of surgical mesh for the transvaginal repair of pelvic organ prolapse."

34.    At the time Defendants began marketing the MiniArc Sling, Defendants were aware that the MiniArc Sling was associated with each and every one of the adverse events communicated by the FDA in its July 13, 2011 Safety Communication.

THE MᶜBRIDE LAW FIRM, PC
Attorneys At Law
9929 N. 95th Street, Suite Q-110
Scottsdale, Arizona 85258
Telephone: 480-678-Law1/ Facsimile: 602-808-9005

35.    The information contained in the FDA's Public Health Notification of October 2008 and  the FDA Safety Communication of July 13, 2011 was known or knowable to Defendants and was not disclosed in oral or written communications, direct to consumer advertising in the form of patient brochures, instructions of use or labeling.

36.    In a December 2011 Joint Committee Opinion, the American College of Obstetricians and Gynecologists ("ACOG") and the American Urogynecologic Society ("AUGS") also identified physical and mechanical changes to the mesh inside the body as a serious complication associated with vaginal mesh, stating:

> There are increasing reports of vaginal pain associated with changes that can occur with mesh (contraction, retraction, or shrinkage) that result in taut sections of mesh . . . Some of these women will require surgical intervention to correct the  condition, and some of the pain appears to be intractable.

37.    The ACOG/AUGS Joint Committee Opinion also recommended, among other things, that "[p]elvic organ prolapse vaginal mesh repair should be reserved for high-risk individuals in whom the benefit of mesh placement may justify the risk."

38.    Defendants knew or should have known about the MiniArc Sling's risks and  complications identified in the FDA Safety Communication and the ACOG/AUGS Joint Committee Opinion.

39.    Defendants knew or should have known that the MiniArc Sling unreasonably exposed patients to the risk of serious harm while conferring no benefit over available feasible alternatives that do  not involve the same risks.

40.    The scientific evidence shows that the material from which the MiniArc Sling is made is biologically incompatible with human tissue and promotes a negative immune response in a large subset of the population implanted with the MiniArc Sling, including Mrs. Goodnight.

41.    This negative response promotes inflammation of the pelvic tissue and contributes to the formation of severe adverse reactions to the mesh, such as those

experienced by Mrs. Goodnight.

42.     The FDA defines both "degradation" and "fragmentation" as "device problems" to which the FDA assigns a specific "device problem code." "Material fragmentation" is defined as an "[i]ssue associated with small pieces of the device breaking off unexpectedly" and "degraded" as an "[i]ssue associated with a deleterious change in the chemical structure, physical properties, or appearance in the materials that are used in device construction."

43.     The MiniArc Sling was unreasonably susceptible to degradation and fragmentation inside the body.

44.     The MiniArc Sling was unreasonably susceptible to shrinkage and contraction inside the body.

45.     The MiniArc Sling was unreasonably susceptible to "creep" or the gradual elongation and deformation when subject to prolonged tension inside the body.

46.     The MiniArc Sling has been and continues to be marketed to the medical community and to patients as safe, effective, reliable, medical devices, implanted by safe and effective, minimally invasive surgical techniques, and as safer and more effective as compared to available feasible alternative treatments of pelvic organ prolapse and stress urinary incontinence, and other competing products.

47.     Defendants omitted the risks, dangers, defects, and disadvantages of the MiniArc Sling, and advertised, promoted, marketed, sold and distributed the MiniArc Sling as a safe medical device when Defendants knew or should have known that the MiniArc Sling was not safe for its intended purposes, and that the MiniArc Sling would cause, and did cause, serious medical problems, and in some patients, including Mrs. Goodnight, significant injuries.

48.     Contrary to Defendants' representations and marketing to the medical community and to the patients themselves, the MiniArc Sling has a high rate of failure, injury, and complications, fails to perform as intended, requires frequent and often

THE McBRIDE LAW FIRM, PC
Attorneys At Law
9929 N. 95th Street, Suite Q-110
Scottsdale, Arizona 85258
Telephone: 480-678-Law1/ Facsimile: 602-808-9005

THE McBRIDE LAW FIRM, PC
Attorneys At Law
9929 N. 95th Street, Suite Q-110
Scottsdale, Arizona 85258
Telephone: 480-678-Law1/ Facsimile: 602-808-9005

1    debilitating re-operations, and has caused severe and irreversible injuries, conditions,

2    and damages to a significant number of women, including Mrs. Goodnight, making

3    them  defective under the law.

4         49.    Defendants have underreported information about the propensity of the

5    MiniArc Sling to fail and cause injury and complications, and have made unfounded

6    representations regarding the efficacy and safety of the MiniArc Sling through various

7    means and media.

8         50.    Defendants have also underreported information about the injuries caused

9    by the use of the implantation kits and surgical technique instructions that accompany

10   the MiniArc Sling.

11        51.    Defendants failed to perform proper and adequate testing and research in

12   order to determine and evaluate the risks and benefits of the MiniArc Sling.

13        52.    Defendants failed to design and establish a safe, effective procedure for

14   removal of the Products, or to determine if a safe, effective procedure for removal of the

15   MiniArc Sling exists.

16        53.    Feasible and suitable alternatives to the MiniArc Sling have existed at all

17   times relevant that do not present the frequency or severity of risks as do the MiniArc Sling.

18        54.    The MiniArc Sling was at all times utilized and implanted in a manner

19   foreseeable to Defendants, as Defendants generated the instructions for use, created the

20   procedures for implanting the devices, provided the surgical kits for implantation, and

21   provided training for the implanting physician.

22        55.    Defendants provided incomplete and insufficient training and information

23   to physicians regarding the use of the MiniArc Sling and the aftercare of patients implanted

24   with the MiniArc Sling.

25        56.    The MiniArc Sling implanted in Mrs. Goodnight was in the same or

26   substantially similar condition as it was when  it left Defendants' possession, and in the

27   condition directed by and expected by Defendants.

28

57.     The injuries, conditions, and complications suffered by numerous women around the world who have been implanted with the MiniArc Sling include, but are not limited to, erosion, mesh contraction, infection, fistula, inflammation, scar tissue, organ perforation, dyspareunia (pain during sexual intercourse), blood loss, neuropathic and other acute and chronic nerve damage and pain, pudendal nerve damage, pelvic floor damage, chronic pelvic pain and other debilitating complications.

58.     Mrs. Goodnight, similar to other reported patients, was forced to undergo extensive medical treatment, including, but not limited to, operations to locate and remove mesh, operations to attempt to repair pelvic organs, tissue, and nerve damage, the use of pain control and other medications, and injections for pain.

59.     The medical and scientific literature studying the effects of Defendants' mesh products, like that of the MiniArc Sling implanted in Mrs. Goodnight, has examined each of these injuries, conditions, and complications, and has reported that they are causally related to the MiniArc Sling.

60.     At all relevant times herein, Defendants continued to promote the MiniArc Sling as safe and effective even when no clinical trials had been done supporting long- or short-term efficacy.

61.     In doing so, Defendants failed to disclose the known risks and failed to warn of known or scientifically knowable dangers and risks associated with the MiniArc Sling.

62.     At all relevant times herein, Defendants failed to provide sufficient warnings and instructions that would have put Mrs. Goodnight and the general public on notice of the dangers and adverse effects caused by implantation of the MiniArc Sling.

63.     The MiniArc Sling as designed, manufactured, distributed, sold and/or supplied by Defendants was defective as marketed due to inadequate warnings, instructions, labeling and/or inadequate testing in the presence of Defendants' knowledge of lack of safety.

THE MCBRIDE LAW FIRM, PC
Attorneys At Law
9929 N. 95th Street, Suite Q-110
Scottsdale, Arizona 85258
Telephone: 480-678-Law1/ Facsimile: 602-808-9005

THE McBRIDE LAW FIRM, PC
Attorneys At Law
9929 N. 95th Street, Suite Q-110
Scottsdale, Arizona 85258
Telephone: 480-678-Law1/ Facsimile: 602-808-9005

64.     As a result of having the MiniArc Sling implanted in her, Mrs. Goodnight has experienced significant mental and physical pain and suffering, has sustained permanent injury, has undergone medical treatment and will likely undergo further medical treatment and procedures, has suffered financial or economic loss, including, but not limited to, obligations for medical services and expenses, lost income, and other damages, for which Defendants are liable to Plaintiffs.

## Causes of Action
### Count I: Negligence

65.     Paragraphs 1-63 of this Complaint are hereby incorporated by reference as if fully set forth herein.

66.     Defendants had a duty to individuals, including Mrs. Goodnight, to use reasonable care in designing, manufacturing, marketing, labeling, packaging and selling the MiniArc Sling.

67.     Defendants were negligent in failing to use reasonable care as described herein in designing, manufacturing, marketing, labeling, packaging and selling the MiniArc Sling. Defendants breached their aforementioned duty by:

   a.  Failing to design the MiniArc Sling so as to avoid an unreasonable risk of harm to women in whom MiniArc Slings were implanted, including Mrs. Goodnight;

   b.  Failing to manufacture the MiniArc Sling so as to avoid an unreasonable risk of harm to women in whom the MiniArc Slings were implanted, including Mrs. Goodnight;

   c.  Failing to use reasonable care in the testing of the MiniArc Sling so as to avoid an unreasonable risk of harm to women in whom the MiniArc Slings were implanted, including Mrs. Goodnight;

   d.  Failing to use reasonable care in inspecting the MiniArc Sling so as to avoid an unreasonable risk of harm to women in whom the MiniArc

THE McBRIDE LAW FIRM, PC
Attorneys At Law
9929 N. 95th Street, Suite Q-110
Scottsdale, Arizona 85258
Telephone: 480-678-Law1/ Facsimile: 602-808-9005

1   Slings were implanted, including Mrs. Goodnight;

2       e.   Otherwise negligently or carelessly designing, manufacturing, marketing,

3   labeling, packaging and/or selling the MiniArc Sling.

4       68.   As a direct and proximate result of Defendants' negligence, Mrs. Goodnight

5   has experienced significant mental and physical pain and suffering, has sustained

6   permanent injury, has undergone medical treatment and will likely undergo further

7   medical treatment and procedures, has suffered financial or economic loss, including,

8   but not limited to, obligations for medical services and expenses, lost income, and

9   other damages.

**Count II: Strict Product Liability**

    69.   Plaintiffs incorporate by reference Paragraphs 1-68 of this Complaint as if fully set forth herein.

    70.   The MiniArc Sling implanted in Mrs. Goodnight was not reasonably safe for its intended use and was defective as described herein due to its lack of appropriate and necessary warnings. Specifically, Defendants did not provide sufficient or adequate warnings regarding, the MiniArc Sling's severity of complications that could arise as a result of implantation and the likelihood that additional medical procedures would be required to correct the damage caused by the defective MiniArc Sling.

    71.   At the time of Plaintiffs' injuries, the MiniArc Slings were defective and unreasonably dangerous to foreseeable consumers, patients, and users, including Plaintiffs, and the warnings labels, and instructions were deficient.

    72.   The Defendants' MiniArc Slings are dangerous and defective, unfit and unsafe for their intended and reasonably foreseeable uses, and do not meet or perform to the expectations of patients and their health care providers.

THE MCBRIDE LAW FIRM, PC
Attorneys At Law
9929 N. 95th Street, Suite Q-110
Scottsdale, Arizona 85258
Telephone: 480-678-Law1/ Facsimile: 602-808-9005

73.     As a proximate result of the Defendants' design, manufacture, marketing, sale, and distribution of the Pelvic Mesh Products, Plaintiffs have been injured, often catastrophically, and sustained severe and permanent pain, suffering, disability, impairment, loss of enjoyment of life, loss of care, comfort, and consortium, economic damages, and death, for which Defendants are strictly liable.

74.     As a direct and proximate result of the MiniArc Sling's defects as described herein, Mrs. Goodnight has experienced significant mental and physical pain and suffering, has sustained permanent injury, has undergone medical treatment and will likely undergo further medical treatment and procedures, has suffered financial or economic loss, including, but not limited to, obligations for medical services and expenses, and/or lost income, and other damages, for which Defendants are strictly liable.

**Count III: Breach of Express Warranty**

75.     Plaintiffs incorporate by reference Paragraphs 1-74 of this Complaint as if fully set forth herein.

76.     Defendants made assurances as described herein to the general public, hospitals and health care professionals that the MiniArc Slings were safe and reasonably fit for their intended purposes.

77.     Mrs. Goodnight and/or her healthcare provider chose the MiniArc Sling based upon Defendants' warranties and representations as described herein regarding the safety and fitness of the MiniArc Sling.

78.     Mrs. Goodnight, individually and/or by and through her physician, reasonably relied upon Defendants' express warranties and guarantees that the MiniArc Slings were safe, merchantable, and reasonably fit for their intended purposes.

79.     Defendants breached these express warranties because the MiniArc Sling implanted in Mrs. Goodnight were unreasonably dangerous and defective as described herein and not as Defendants had represented.

THE MCBRIDE LAW FIRM, PC
Attorneys At Law
9929 N. 95th Street, Suite Q-110
Scottsdale, Arizona 85258
Telephone: 480-678-Law1/ Facsimile: 602-808-9005

80.    Defendants' breach of their express warranties resulted in the implantation of an unreasonably dangerous and defective product in Mrs. Goodnight, placing her health and safety in jeopardy.

81.    As a direct and proximate result of Defendants' breach of the aforementioned express warranties, Mrs. Goodnight has experienced significant mental and physical pain and suffering, has sustained permanent injury, has undergone medical treatment and will likely undergo further medical treatment and procedures, has suffered financial or economic loss, including, but not limited to, obligations for medical services and expenses, and/or lost income, and other damages, for which Defendants are liable.

**Count IV: Breach of Implied Warranty**

82.    Plaintiffs incorporate by reference Paragraphs 1-81 of this Complaint as if fully set forth herein.

83.    Defendants impliedly warranted that the MiniArc Slings were merchantable and were fit for the ordinary purposes for which they were intended.

84.    When the MiniArc Sling was implanted in Mrs. Goodnight to treat her stress urinary incontinence, the MiniArc Slings was being used for the ordinary purposes for which they were intended.

85.    Mrs. Goodnight, individually and/or by and through her physician, relied upon Defendants' implied warranties of merchantability in consenting to have the MiniArc Sling implanted in her.

86.    Defendants breached these implied warranties of merchantability because the MiniArc Sling was implanted in Mrs. Goodnight was neither merchantable nor suited for its intended uses as warranted.

87.    Defendants' breach of their implied warranties resulted in the implantation of an unreasonably dangerous and defective product into Mrs. Goodnight, placing her health and safety in jeopardy.

THE McBRIDE LAW FIRM, PC
Attorneys At Law
9929 N. 95th Street, Suite Q-110
Scottsdale, Arizona 85258
Telephone: 480-678-Law1/ Facsimile: 602-808-9005

88.     As a direct and proximate result of Defendants' breach of the aforementioned implied warranties, Mrs. Goodnight has experienced significant mental and physical pain and suffering, has sustained permanent injury, has undergone medical treatment and will likely undergo further medical treatment and procedures, has suffered financial or economic loss, including, but not limited to, obligations for medical services and expenses, and/or lost income, and other damages, for which Defendants are liable.

**Count V: Fraudulent Concealment**

89.     Plaintiffs incorporate by reference paragraphs 1-88 of this Complaint as if fully set forth herein.

90.     On October 20, 2008, the Food and Drug Administration ("FDA") issued a Public Health Notification that described over 1,000 reports of complications (otherwise known as "adverse events") that had been reported over a three year period relating to pelvic mesh products.

91.     Although the FDA notice did not identify the transvaginal mesh manufacturers by name, a review of the FDA's MAUDE database indicates that the Defendants are one of the manufacturers of the products that are the subject of the notification.  In 2008, the FDA described the complications associated with pelvic mesh products as "rare."

92.     The FDA further stated that "specific characteristics of patients at increased risk for complications have not been determined."  As a result, the FDA recommended, among other things, doctors "[o]btain specialized training for each mesh placement technique, and be aware of its risks".

93.     Despite the FDA's statement that complications caused by the mesh were "rare", the Defendants knew at all times material to these actions that complications were, in fact, not rare.  Furthermore, the Defendants knew at all relevant times that the FDA's focus on training and surgical technique of the implanting physicians was misguided.

THE MCBRIDE LAW FIRM, PC
Attorneys At Law
9929 N. 95th Street, Suite Q-110
Scottsdale, Arizona 85258
Telephone: 480-678-Law1 / Facsimile: 602-808-9005

94.     At all times prior to the October 20, 2008 Public Health Notification to the present, it was known or knowable to Defendants that their pelvic mesh products caused large numbers of complications that were not rare.   Moreover, it was known or knowable to Defendants that the surgical technique and training of implanting physicians was not the cause of the adverse events associated with these devices.

95.     It was known or knowable to Defendants that the safety and efficacy of its pelvic mesh products had not been proven with respect to, among other things, the product, its components, its performance and its method of insertion.

96.     It was known or knowable to Defendants that there was no evidence that its pelvic mesh products were safe and effective and, in fact the evidence that was known or knowable to Defendants was that its pelvic mesh products were not safe and effective. Defendants continued to represent that its pelvic mesh products, including the MiniArc Slings, were safe and effective.

97.     Despite what was known or knowable to Defendants about the lack of safety and efficacy of its pelvic mesh products prior to 2008, Defendants failed to disclose this information to Mrs. Goodnight, to her physicians or to the public at large.   Instead, Defendants continued to market and sell the MiniArc Sling as being safe and efficacious with evidence to the contrary.

98.     At all times mentioned herein, Defendants, and each of them, had the duty and obligation to disclose to Mrs. Goodnight and to her physicians, the true facts concerning the MiniArc Sling, that is, that the MiniArc Slings were dangerous and defective, lacking efficacy for its purported use and lacking safety in normal use, and how likely it was to cause serious consequences to users including permanent and debilitating injuries.  Defendant concealed these material facts prior to the time that Mrs. Goodnight was implanted with Defendants' MiniArc Sling.

99.     The facts concealed and/or not disclosed by Defendants to Mrs. Goodnight were material facts that a reasonable person would have considered to be important in

THE MCBRIDE LAW FIRM, PC
Attorneys At Law
9929 N. 95th Street, Suite Q-110
Scottsdale, Arizona 85258
Telephone: 480-678-Law1/ Facsimile: 602-808-9005

deciding whether or not to purchase and/or use the Defendants' MiniArc Sling.

100.   At all times herein mentioned, Defendants, and each of them, willfully, intentionally, and  maliciously concealed facts as set forth above from Mrs. Goodnight and her physicians, and with the intent to defraud as herein alleged.

101.   Defendants intentionally concealed and/or failed to disclose the true defective nature of the MiniArc Sling so that Mrs. Goodnight, or her medical providers, would request and purchase the MiniArc Sling, and that her healthcare providers would dispense, prescribe, and recommend the MiniArc Sling, and Mrs. Goodnight justifiably acted or relied upon, to her detriment, the concealed and/or non-disclosed facts as evidenced by her purchase of the MiniArc Sling.

102.   Defendants' failure to disclose the defective and unreasonably dangerous condition of the MiniArc Sling was a substantial factor in Mrs. Goodnight's physicians selecting the MiniArc Sling for treatment of her stress urinary incontinence. This failure to disclose also resulted in the provision of incorrect and incomplete information to Mrs. Goodnight.

103.   As a direct and proximate result of Defendants' fraudulent concealment, Mrs. Goodnight has experienced significant mental and physical pain and suffering, has sustained permanent injury, has undergone medical treatment and will likely undergo further medical treatment and  procedures, has suffered financial or economic loss, including, but not limited to, obligations for medical services and expenses, and/or lost income, and other damages, for which Defendants are liable.

### Count VI: Constructive Fraud

104.   Plaintiffs incorporate by reference Paragraphs 1-103 of this Complaint as if fully set forth herein.

105.   Defendants are in a unique position of knowledge concerning the quality, safety and efficacy of the Defendants' MiniArc Sling, which knowledge is not possessed

by Mrs. Goodnight or her physicians, and Defendants thereby held a position of superiority over Mrs. Goodnight and her physicians.

106.   Despite their unique and superior knowledge regarding the defective nature of the Defendants' Pelvic Mesh Products, Defendants continued to suppress, conceal, omit, and/or misrepresent information to Mrs. Goodnight, the medical community, and/or the FDA, concerning the severity of risks and the dangers inherent in the intended use of the MiniArc Sling, as compared to other products and forms of treatment.

107.   Defendants have concealed and suppressed material information, including limited clinical testing, that would reveal that the MiniArc Sling had a higher risk of adverse effects, in addition to, and exceeding those associated with alternative procedures and available devices. Instead, Defendants misrepresented the safety and efficacy of the MiniArc Sling.

108.   Upon information and belief, Defendants' misrepresentations are designed to induce physicians and Plaintiffs to prescribe, dispense, recommend and/or purchase the Defendants' MiniArc Sling. Plaintiffs and the medical community have relied upon Defendants' representations.

109.   Defendants took unconscionable advantage of their dominant position of knowledge with regard to Plaintiffs and their medical providers and engaged in constructive fraud in their relationship with Plaintiffs and their medical providers. Plaintiffs reasonably relied on Defendants' representations.

110.   As a proximate result of the Defendants' conduct, Plaintiffs have been injured, and sustained severe and permanent pain, suffering, disability, impairment, loss of enjoyment of life, loss of care, comfort, and consortium, and economic damages, for which Defendants are liable.

### Count VII: Negligent Misrepresentation

111.   Plaintiffs incorporate by reference Paragraphs 1-110 of this Complaint as if fully set forth herein.

THE McBRIDE LAW FIRM, PC
Attorneys At Law
9929 N. 95th Street, Suite Q-110
Scottsdale, Arizona 85258
Telephone: 480-678-Law1/ Facsimile: 602-808-9005

THE McBRIDE LAW FIRM, PC
Attorneys At Law
9929 N. 95th Street, Suite Q-110
Scottsdale, Arizona 85258
Telephone: 480-678-Law1/ Facsimile: 602-808-9005

112.   Defendants had a duty to accurately and truthfully represent to the medical and healthcare community, Plaintiffs, and the public, that the MiniArc Sling had not been adequately tested and found to be safe and effective for the treatment of incontinence and prolapse.  The representations made by Defendants, in fact, were false.

113.   Defendants failed to exercise ordinary care in the representations concerning the MiniArc Sling while they were involved in their manufacture, sale, testing, quality assurance, quality control, and distribution in interstate commerce, because Defendants negligently misrepresented the MiniArc Sling's high risk of unreasonable, dangerous, adverse side effects.

114.   Defendants breached their duty in representing that the MiniArc Sling have no serious side effects different from older generations of similar products and/or procedures to Mrs. Goodnight, her physicians, and the medical and healthcare community.

115.   As a foreseeable, direct and proximate result of the negligent misrepresentation of Defendants as set forth herein, Defendants knew, and had reason to know, that the MiniArc Sling had been insufficiently tested, or had not been tested at all, and that they lacked adequate and accurate warnings, and that they created a high risk, and/or higher than acceptable risk, and/or higher than reported and represented risk, of adverse side effects, including, erosion, pain and suffering, surgery to remove the products, and other severe and personal injuries, which are permanent and lasting in nature.

116.   As a direct and proximate result of the Defendants' conduct, Plaintiffs have been injured, and sustained severe and permanent pain, suffering, disability, impairment, loss of enjoyment of life, loss of care, comfort, and consortium, and economic damages, for which Defendants are liable.

### Count VIII: Negligent Infliction of Emotional Distress

117.   Plaintiffs incorporate by reference Paragraphs 1-116 of this Complaint as if fully set forth herein.

THE McBRIDE LAW FIRM, PC
Attorneys At Law
9929 N. 95th Street, Suite Q-110
Scottsdale, Arizona 85258
Telephone: 480-678-Law1/ Facsimile: 602-808-9005

118.   Defendants carelessly and negligently manufactured, designed, developed, tested, labeled, marketed and sold the Defendants' MiniArc Sling to Plaintiffs, carelessly and negligently concealing the harmful effects of the Defendants' Pelvic Mesh Products from Plaintiffs, and carelessly and negligently misrepresented the quality, safety and efficacy of the products.

119.   Plaintiffs were directly impacted by Defendants' carelessness and negligence, in that Plaintiffs have sustained and will continue to sustain emotional distress, severe physical injuries and/or death, economic losses, and other damages as a direct result of being implanted with the Pelvic Mesh Products sold and distributed by Defendants and/or because of the nature of their relationship to the individual implanted with the Pelvic Mesh Products.

120.   As a direct and proximate result of the Defendants' conduct, Plaintiffs have been injured, and sustained severe and permanent pain, suffering, disability, impairment, loss of enjoyment of life, loss of care, comfort, and consortium, and economic damages, for which Defendants are liable.

## Count IX: Punitive Damages

121.   Plaintiffs incorporate by reference Paragraphs 1-120 of this Complaint as if fully set forth herein.

122.   Defendants sold the MiniArc Sling to Mrs. Goodnight's Healthcare providers and other healthcare providers throughout the United States without doing adequate testing to ensure that the MiniArc Sling was reasonably safe for implantation in the female pelvic area.

123.   Defendants sold the MiniArc Sling to Mrs. Goodnight's health care providers and other health care providers throughout the United States in spite of their knowledge that the MiniArc Sling can shrink, disintegrate and/or degrade inside the body, and cause the other problems heretofore set forth in Complaint, thereby causing severe and debilitating injuries suffered by Mrs. Goodnight and numerous other women.

124.   Defendants ignored reports from patients and health care providers throughout the United States and elsewhere of the MiniArc Sling's failure to perform as intended, which lead to the severe and debilitating injuries suffered by Mrs. Goodnight and numerous other women.  Rather than doing adequate testing to determine the cause of these injuries, or to rule out the MiniArc Sling's design or the processes by which the MiniArc Sling was manufactured as the cause of these injuries, Defendants chose instead to continue to market and sell the MiniArc Sling as safe and effective.

125.   Defendants knew the MiniArc Sling was unreasonably dangerous in light of their risks of failure, pain and suffering, loss of life's enjoyment, remedial surgeries and treatments in an effort  to cure the conditions proximately related to the use of the MiniArc Sling, as well as other severe and  personal injuries which were permanent and lasting in nature.

126.   Defendants withheld material information from the medical community and the public in general,  including Mrs. Goodnight,  regarding the safety and efficacy of the MiniArc Sling.

127.   Defendants knew and recklessly disregarded the fact that the MiniArc Sling caused debilitating and potentially life altering complications with greater frequency than feasible alternative  methods and/or products used to treat pelvic organ prolapse and stress urinary incontinence.

128.   Defendants misstated and misrepresented data and continue to misrepresent data so as to  minimize the perceived risk of injuries caused by the MiniArc Sling.

129.   Notwithstanding the foregoing, Defendants continue to aggressively market the MiniArc Sling to consumers, without disclosing the true risks associated with the MiniArc Sling.

130.   Defendants knew of the MiniArc Sling's defective and unreasonably dangerous nature,  but continued to manufacture, market, distribute, and sell the MiniArc

THE MCBRIDE LAW FIRM, PC
Attorneys At Law
9929 N. 95th Street, Suite Q-110
Scottsdale, Arizona 85258
Telephone: 480-678-Law1/ Facsimile: 602-808-9005

THE McBRIDE LAW FIRM, PC
Attorneys At Law
9929 N. 95th Street, Suite Q-110
Scottsdale, Arizona 85258
Telephone: 480-678-Law1/ Facsimile: 602-808-9005

Sling so as to maximize sales and profits at the expense of the health and safety of the public, including Mrs. Goodnight.

131.   Defendants continue to conceal and/or fail to disclose to the public, including Mrs. Goodnight, the serious complications associated with the use of the MiniArc Sling to ensure continued and increased sales of the MiniArc Sling.

132.   Defendants' conduct as described herein shows willful misconduct, malice, fraud, wantonness, oppression, or that entire want of care which raises the presumption of conscious indifference to consequences, thereby justifying an award of punitive damages.

### Prayer for Relief

WHEREFORE, Plaintiffs demand judgment against Defendants, and each of them, individually, jointly and severally and requests compensatory damages, together with interest, cost of suit, attorneys' fees, and all such other relief as the Court deems just and proper as well as:

A.   Compensatory damages for past, present, and future damages, including, but not limited to, pain and suffering for severe and permanent personal injuries sustained by Plaintiffs, health and medical care costs, with interest and costs as provided by law;

B.   Restitution and disgorgement of profits;

C.   The costs of these proceedings;

D.   All ascertainable economic damages;

E.   Punitive damages; and

F.   Such other and further relief as this Court deems just and proper.

DATED this 9th day of October, 2014.

THE McBRIDE LAW FIRM, PC

By: */s/* Melanie G. McBride
Melanie G. McBride, Esq.
Keith A. Gernant, Esq.
*Attorneys for Plaintiffs*

22